UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) CRIMINAL NO. 4:15-CR-00543 |
| | ) |
| JOSEPH SCOTT BALLEW | ) |

**<u>DEFENDANT, JOSEPH SCOTT BALLEW'S SENTENCING MEMORANDUM</u>**

Joseph Ballew, through counsel, submits this Sentencing Memorandum in support of a sentence of five years in prison and an appropriate term of supervised release with conditions. This sentence reflects the nature and circumstances of Mr. Ballew's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2).

**I. INTRODUCTION**

On February 7, 2015, special agents came to Mr. Ballew's home and conducted a knock and talk. There, Mr. Ballew admitted to downloading and viewing child pornography and consented to the search of both his residence and his computer. Mr. Ballew was not arrested or charged with a crime but asked to check in periodically with Special Agent Guerra. While awaiting his inevitable arrest, Mr. Ballew complied with Special Agent Guerra's instructions, was indicted on October 7, 2015 and later arrested without incident. Mr. Ballew was bailed and assessed conditions of his bail. Mr. Ballew appeared in court for every court setting and is in compliance with every bond condition.

The FBI conducted a forensic examination of Mr. Ballew's computer. The report concluded that Mr. Ballew's laptop contained images of child pornography. The search also revealed that there was no evidence that Mr. Ballew ever manufactured these images. There was

no evidence that Mr. Ballew paid for the images or traded other images. There was no evidence that Mr. Ballew knowingly shared the images. There was no evidence that Mr. Ballew ever solicited a child. There was no evidence that Mr. Ballew "chatted" with a child. There was no evidence that Mr. Ballew ever molested a child.

Mr. Ballew was born and raised in Sudan, Texas by his parents. When he was 13, his father committed suicide, and his mother remarried when he was in the 12th grade. After her marriage, he lived with his maternal grandparents. Mr. Ballew graduated from Sudan High School in 1983. In 1987, he earned a Bachelor's of Science in Electrical Engineering from Texas Tech University. He earned an "Executive MBA" in 2009 at University of Texas at Austin. He worked as an engineering supervisor for Aramco Services Company for three years. He then left to work with a software startup company. He worked for 15 years at Lyondell Chemical Company and 5 years with Fina. He also worked for General Dynamics for 2-1/2 years as an engineer. On March 4, 2015, his mother passed away from cancer. Prior to his mother's death, Mr. Ballew had moved in with his mother in order to take care of her.

Since February 2016, Mr. Ballew has been receiving weekly counseling. His psychologist, Dr. Schmidt, states that "his behaviors with regards to pornography reflect an addiction rooted in impacted grief relating to the death of his father by his own hand when Mr. Ballew was thirteen years of age." (Exhibit 1).

Mr. Ballew is 52 years old. He has no criminal history. He has complied with all conditions of pre-trial release over the past twenty-four months.

1. **Legal Framework**

The Guidelines are not mandatory or presumptive. *Gall v. United States*, 552 U.S. 38, 51 (2007); *Nelson v. United States*, 555 U.S. 350, 352 (2009). The Court needs to only treat the

2

Guidelines as "one factor among several" to be weighed when sentencing under § 3553(a). *Kimbrough v United States*, 552 U.S. 85, 90 (2007). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper*, 131 S. Ct. at 1242-43.

"The Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (citing *Rita v. United States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"). The Supreme Court has previously found that courts may vary from the Guidelines, even where no particular circumstances justify a variance, when the Guideline sentence yields a sentence greater than necessary to achieve § 3553(a)'s purposes. *See Kimbrough*, 552 U.S. at 91, 109-10; *see also Spears v. United States*, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range.").

This variance is not limited to the crack guidelines but would also apply to § 2G2.2. The Supreme Court has previously remanded a case for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." Brief for the United States, *Vazquez v. United States*, 558 U.S. 1144 (2010) (No. 09-5370, at 11) (Nov. 2009). Congressional directives "tell the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a particular Guidelines range is

3

not a mandate that sentencing courts stay within it." *US v. Michael*. 573 F.3d 523, 328 (6th Cir. 2009). The Third Circuit has specifically extended this reasoning to § 2G2.2, applying an abuse of discretion review to a downward variance from § 2G2.2 because the "Commission did not do what 'an exercise of its characteristic institutional role' required—develop §2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress." *United States v. Grober*, 624 F.3d 592, 600-01 (3d Cir. 2010).

2. <u>**Requested Sentence**</u>

Mr. Ballew asks this court to impose a sentence of five years and an appropriate term of supervised release with conditions. Unlike the advisory guideline range of 151-188 months in prison, the requested sentence is "sufficient, but not greater than necessary" to serve sentencing purposes under § 3553(a).

## II. ARGUMENT

1. <u>**The sentence requested is sufficient, but not greater than necessary, to satisfy the purposes of sentencing under 18 U.S.C. §3553(a)**</u>.

   A. **Nature and Circumstances of Mr. Ballew's Offense and His History and Characteristics, 18 U.S.C. 3553(a)(1)**

Mr. Ballew should receive a lighter, non-Guideline sentence in light of the fact of his diminished capacity, his vulnerability to abuse in prison, the odds of recidivism are low, his need for mental health treatment, his post-arrest rehabilitation, and the need to avoid unwarranted sentence disparities.

The Court should consider a variance due to Mr. Ballew's diminished capacity. *See United States v. Tanasi*, 2004 WL 406724 (S.D.N.Y. 2004) (defendant convicted on a guilty plea to receiving and distributing child pornography granted downward sentencing departure on the basis of diminished capacity; his involvement in child pornography was not a product of controlled

4

rational calculation but rather stemmed from a pornographic obsession in constant need of fueling). Mr. Ballew participated in this self-destructive behavior as an escape from grief and his ongoing battle with depression that stemmed from the suicide of his father. His addiction is not rooted in child pornography but rather, it is an aspect of the addiction.

The Court can provide Mr. Ballew a variance due to his post-arrest rehabilitation. *See Pepper v. United States*, 131 S.Ct. 1229 (2011) (holding that a district court at resentencing may consider evidence of a defendant's post-sentencing rehabilitation in support of a downward variance). Since his arrest, Mr. Ballew has sought counseling and treatment to address his underlying metal issues that led to his criminal conduct. He has attended weekly therapy, worked on assignments from the cognitive-behaviorally based Adult Relapse Prevention Wordbook, and has expressed empathy for the victims of his crime.

Courts may consider a defendants' age under § 3553(a). *Gall v. United States*, 128 S. Ct. 586, 593, 599 (2007) (affirming sentence of probation, in part, for defendant's age at the time the offense was conducted); *United States. v. Clark*, 289 Fed. Appx. 44 (5th Cir.2008) (court applied a below-guidelines term of 190 months for methamphetamine conspiracy conviction because defendant's age made him unlikely to commit further crime upon release).

Mr. Ballew, a 52 year old, is less likely to recommit a crime than younger offenders. The Commission has found "recidivism rates decline relatively consistently as age increases." *See* U.S. Sentencing Comm'n, *Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate* (May 2004). For sex offenders, too, recidivism declines with age, and only a very few child sex offenders recidivate after age 60. *See* R.K. Hanson, *Recidivism and Age: Follow-up Data from 4,673 Sexual Offenders*, 17 J. Interpers. Violence 1046, 1054

(2002).

If the court finds that a defendant is vulnerable to victimization or abuse in prison, then the Court may sentence the defendant to a non-Guideline sentence. *Koon v. U.S.*, 518 U.S. 81 (1996) (no abuse of discretion to grant downward departure to police officers convicted of civil rights violation due to their vulnerability in prison). The Department of Justice has found that elderly inmates are vulnerable to abuse and predation. *See* Correctional Health Care Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Dept. of Justice National Institute of Corrections, 9, 10 (2004). Further, it is well known that inmates incarcerated for child crimes are more vulnerable to victimization or abuse. For these reasons, the Court should sentence Mr. Ballew to a lesser sentence than pronounced under the Guidelines.

**2.  Need for Just Punishment in Light of the Seriousness of the Offense, 18 U.S.C. § 3553(a)(2)(A)**

While possession of child pornography is a reprehensible crime, the Guidelines overstate Mr. Ballew's culpability. Under the child pornography statute, almost all offenders receive the majority of the guideline-enhancements and there is no empirical evidence or social science to support the majority of the rationale for the enhancements applied to Mr. Ballew.  Further, the severity of the punishment for possession of child pornography is stemmed from the misbelief that those who possess child pornography are child predators. As the forensic analysis showed, Mr. Ballew never once attempted to solicit or traffic a child. When coupled with the collateral consequences of the conviction, the requested sentence addresses the seriousness of the offense and is just.

In February 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines. *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) [hereinafter, "*Child Porn Report*"]. A major reason the Commission

6

compiled the report was due to "recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii, 323.

The enhancements for material involving prepubescent minors, material depicting sadistic or masochistic conduct, use of a computer, and number of images apply in nearly every case sentenced under § 2G2.2. In 2011, 95.3% of defendants received the 2-level enhancement for material involving prepubescent minors; 79.4% received the 4-level enhancement sadistic or masochistic material; 97.4% received the 2-level enhancement for use of a computer; and 96% received at least a 2-level enhancement based on the number of images, with 70.9% receiving the 5-level enhancement for 600 images or more. U.S. Sent'g Comm'n, *Use of Guidelines and Specific Offense Characteristics* (2011). Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *Child Porn Report*, at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *id.* at 323. Further, "the current guideline measures for offender culpability (*e.g.*, for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]." *Id.* at 204. The Commission concluded that "[t]he current sentencing scheme in § 2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphasis on offenders' community involvement and sexual dangerousness." *Id.* at xx; *see also id.* at 321.

Mr. Ballew was given a five point enhancement for the number of images and a four point

7

enhancement because the offense involved material that portrays sadistic or masochistic conduct. PSR ¶¶ 21; 23. Not only is this typical and not associated with criminally sexually dangerous behavior—as the Commission pointed out—other studies have found that the level of severity of the images possessed does not correlate to an increased risk of committing another child pornography offense or a contact offense. *See* Jody Osborn *et al.*, *The Use of Actuarial Risk Assessment Measures with UK Internet Child Pornography Offenders*, 2 J. Aggression, Conflict & Peace Res. 16, 19 (2010).

Another primary justification for severely punishing child pornography possessors is that they support the market for child pornography and thus encourage the abuse of more children in order to create new images. *See* 136 Cong. Rec. S4730 (Apr. 20, 1990). There is no research to support the theory that criminal punishments have affected the child pornography markets since the advent of the Internet and file sharing programs. *Child Porn Report* at 98. Moreover, as an FBI agent testified in another case, when law enforcement downloads files from file sharing sites, it is not contributing to the global demand for child pornography and not causing any new child pornography to be made because the files already exist and no financial or other incentive is given.[1] Similar to the FBI actions, Mr. Ballew's download did not contribute to the global demand for child pornography.

In *Kimbrough*, the Supreme Court addressed the crack guidelines and refuted Congress' reasons for its policy and, for this reason, granted courts the discretion to impose sentences outside that range dictated by the Guidelines. Similar to the crack guidelines, Congress, in amending § 2G2.2, relied on "assumptions . . . that more recent research and data no longer support." *Kimbrough*, 552 U.S. at 97. Since 1991, when the guideline for possession of child pornography

---

[1] Tr.of Sent'g Hr'g at 31-32, *United States v. Bistline*, No. 2:09-CR-00085-JLG-TPK (S.D. Ohio Jan. 7, 2010).

was first created, the offense level applicable to Mr. Ballew's offense has risen by 25 levels. As other courts have pointed out, this exponential growth in the Guidelines is driven by politics rather than science. *See United States v. Kelly*, 868 F. Supp. 2d 1202, 1205 (D.N.M. 2012); *United States v. Meiller*, 650 F. Supp. 2d 887, 895 (D. Minn. 2009).

One of the goals of the Sentencing Reform Act was to provide for proportionality in punishment among offenses of different seriousness. S. Rep. No. 98-225, at 45-46 (1983). In *United States v. Dorvee*, the Second Circuit noted that the child pornography guideline fails this goal. 616 F.3d 174, 187 (2010). In order to receive an offense level of 34 as Mr. Ballew did for viewing child pornography, one could, for example, attempt to commit first degree murder, *see* § 2A2.1(a)(1); commit rape resulting in more than serious but less than permanent bodily injury, *see* § 2A3.1(a)(2), (b)(4); hold a person in involuntary servitude for over a year by use of a weapon and cause permanent bodily injury, *see* § 2H4.1(a)(1), (b)(1), (b)(2), and (b)(3); or rob a bank of $800,000, while brandishing a weapon and causing bodily injury, *see* § 2B3.1(a), (b)(1), (b)(2), (b)(7).

The Court should consider a variance due to the collateral consequences in sentencing Mr. Ballew. *See United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (in a case involving a conviction for possession of child pornography, the court affirmed the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," because "[c]onsideration of these facts is consistent with § 3553(a)"); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (affirming below-guideline sentence based in part on court's findings that defendant suffered substantial mental and personal stress as a result of his prosecution, because the court's findings "were directly relevant to the § 3553(a) analysis").

9

In addition to the punishment Mr. Ballew receives, he must register as a sex offender, be monitored and restricted by community supervision, and will have great difficulty finding work.

### 3. Need for Adequate Deterrence, 18 U.S.C. § 3553(a)(2)(B)

The requested sentence, coupled with the sex offender registration requirement and the social stigma associated with this conviction and arrest, provides adequate deterrence because a greater sentence would not create a significant greater deterrence or reduce the market demand for child pornography.

The Sentencing Commission found that there is not research to support the notion that punishments have affected the child pornography market since its induction into the Internet and file sharing programs. *See Child Porn Report* at 98. Further, empirical studies have found that there is no significant correlation between sentence length and general or specific deterrence, regardless of the type of crime.[2]

We believe that the objectives of deterrence and retribution have been achieved with the five-year sentence requested, and that the Court should use its sentencing power in order to craft a sentence that will provide the most effective correctional treatment, which we believe is a period of supervised release with certain special conditions. Although custodial sentences are more severe

---

[2] *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

10

Case 4:15-cr-00543   Document 56   Filed in TXSD on 02/14/17   Page 11 of 16

than probationary sentences of equivalent terms, offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights*, 534 U. S. 112, 119 (2001) (stating inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled" (quoting Griffin v. Wisconsin, 483 U. S. 868, 874 (1987)). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG §5B1.3. Most probationers are also subject to individual 'special conditions' imposed by the court. <u>Protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(C)</u>.

The requested sentence adheres to the § 3553(a)(2)(C) requirements because offenders similar to Mr. Ballew's crime and characteristics bear a low risk of recidivism and are unlikely to abuse children and the requested sentence provides sufficient safeguards to monitor Mr. Ballew. Further, the public will be better protected by providing counseling to Mr. Ballew rather than incarceration.

The Fifth Circuit has previously upheld a downward variance due the reduced rate of recidivism. *United States v. Clark*, 289 Fed. Appx. 44 (5th Cir. 2008) (court applied a below-guidelines term of 190 months for methamphetamine conspiracy conviction because defendant's age made him unlikely to commit further crime upon release).

As stated earlier, a primary assumption underlying Congress' actions with respect to the child pornography guideline has been that possessors of child pornography are likely to sexually abuse children. This belief is contrary to the empirical research in general, and is unjustified based

on the evidence in this case.

Current empirical research demonstrates that "first-time child pornography possession only offenders appear to be very low risk of sexual recidivism [of any kind], in contrast to those with any prior or concurrent criminal convictions or those who engage in other sexual offending (e.g., attempted or actual contacts with a child, production of child pornography)," Written Statement of Michael C. Seto, Ph.D., C. Psych. before the U.S. Sent'g. Comm'n at 4 (Feb. 15, 2012)[3] and "online offenders who had no history of contact offenses almost never committed contact sexual offenses." Michael C. Seto *et al.*, *Contact Sexual Offending by Men With Online Sexual Offenses*, 23 Sexual Abuse 124, 137 (2011).[4] As one court stated, "the empirical literature generally concludes that there is little—if any—evidence of a direct correlation between viewing child pornography and the viewer's commission of 'contact' sexual offenses." *United States v. Marshall*, 870 F. Supp. 2d 489, 492 (N.D. Ohio 2102).

Although recidivism rates are low, under the requested punishment, the public is further protected from future crimes. Mr. Ballew would be placed under community supervision where Probation could institute enforcement policies that protect the community (such as programs that monitor Mr. Ballew's internet use). And as stated by the Court, Probation is stealthy and good at random visits to places. *See* Hearing Tr. p. 39, ln 12-13, October 14, 2014. Mr. Ballew has proven his ability to comply with similar restrictions by his full compliance with them since April 2014.

---

[3] Available at http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20120215-16/Testimony_15_Seto.pdf.

[4] *See also* Written Statement of RichardWollert, Ph.D. before the U.S. Sent'g. Comm'n, at 14-17, 21-22 (Feb. 15, 2012) (reporting that in his study of 72 federal child pornography offenders under supervision, including three production offenders, with varying criminal histories, two were arrested for possessing child pornography and none were arrested for a contact offense within four years); Jérôme Endrass *et al.*, *The Consumption of Internet Child Pornography and Violent Sex Offending*, 9 BMC Psychiatry 43 (2009) (study that followed 231 child pornography offenders for six years after initial offenses found that only two offenders (0.8%) committed a contact offense, and only nine offenders (3.9%) committed a non-contact sexual offense, and concluded that "the consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses . . . at least not in those subjects without prior convictions for hands-on sex offenses.

The Court should consider a variance in order to facilitate a defendant's participation in rehabilitative programs.[5] Several courts have found that counseling and treatment rather than prison protects the public and promotes deterrence. *See United States v. Duhon*, 541 F.3d 391 (5 Cir. 2008) (where defendant convicted of possession of child porn and guidelines 33-40 months, district court's sentence to probation reasonable in part "[b]ecause of the district court's strong emphasis on [Duhon's] general need for treatment"); *United States v. Grossman*, 513 F.3d 592 (6 Cir. 2008) (in case of possession of child porn where guidelines 135-168 months, district court's variance to 66 months and 10 years supervised release proper in part because "while the [district] court accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct, it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release, which itself contains substantial limitations on an individual's freedom.")

**4.    The requested sentence avoids unwarranted disparities and unwarranted similarities, 18 U.S.C. § 3553(a)(6).**

In this case, a substantial variance is necessary to avoid unwarranted uniformity between Mr. Ballew and dissimilar defendants who committed dissimilar conduct and unwarranted

---

[5] See, e.g.,United States v. Thompson, 315 F.3d 1071 (9th Cir. 2002) (Berzon, J. concurring) (although district court erred in departing downward on ground that Defendant's conduct outside heartland of possession of child porn guideline, district court should consider departure to allow Defendant to enter sex treatment in prison immediately, instead of waiting years in prison); United States v. Jones, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered that imprisonment would sever the defendant's access to rehabilitative counseling – one of the purposes of sentencing is "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2)(D)); United States v. Martin, 827 F.Supp. 232 (S.D.N.Y. 1993) (district court departed downward from 48 to 30 months to enable Defendant to be eligible for boot camp. Court found that boot camp might help the defendant make a clean break with former lifestyle and departure proper if boot camp provided the best hope of protecting the public, deterring misconduct and providing rehabilitation); cf. United States v. Duran, 37 F.3d 557, 560- 61 & n. 3 (9th Cir. 1994) ("once imprisonment is selected as the means of punishment," the court may consider "correctional treatment" and "rehabilitation" to determine the length of sentence. In this case, these considerations justified a longer sentence. Court notes that "a sentence of not less than 12 nor more than 30 months permits the court to commit a defendant to an Intensive Confinement Center."

disparities between defendants for similar conduct. This is true because the majority of offenders sentenced under § 2G2.2 were sentenced below the Guideline range, adherence to the Guidelines would create virtually no distinction between the average offender and the most dangerous, and under a State charge for similar conduct the offender would have been deferred adjudication. Defendants charged under similar facts regularly received deferred probation where they are required to register as a sex offender.

In fiscal year 2011, only 32.8% of defendants sentenced under § 2G2.2 nationwide received a sentence within the Guideline range, and 65.6% were below the range. In 2011, forty-seven defendants sentenced under § 2G2.2 nationwide received no imprisonment or a term of imprisonment no more than six months. *See Placement of Sentences Under U.S.S.G. § 2G2.2 – FY 2011* at 4, http://www.fd.org/docs/select-topics---sentencing/placement-of-sentences-under-u-s-s-g-2g2-2---fy-2011.pdf?sfvrsn=4.

Adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Mr. Ballew, and the sentences for the most dangerous offenders. As many courts have observed, the child pornography guideline, by enhancing sentences based upon factors that are inherent in the crime and thus appear in nearly every case, concentrates the majority of offenders at or near the statutory maximum and thus fails to meaningfully distinguish more serious offenders from less serious offenders.[6]  Sentences at or near the statutory maximum should be reserved for the "worst possible variation of the crime" committed by the most dangerous offender. *See United States v. Aleo*, 681 F.3d 290, 302 (6th Cir. 2012); *cf. United States v. Poynter*, 495 F.3d 349, 354 (6th Cir. 2007) ("not all repeat sex offenders deserve" to be sentenced at the statutory

---

[6] *See, e.g.*, *United States v. Durham,* 618 F.3d 921, 931 n.7 (8th Cir. 2010); *United States v. Dorvee*, 616  F.3d 174, 187 (2d Cir. 2010); *United States v. Kelly*, 868 F. Supp. 2d at 1208-09; *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009); *Cruikshank*, 667 F. Supp. 2d at 702.

14

maximum; "otherwise, Congress would not have set a statutory range of 0-60 years"). This result is fundamentally incompatible with § 3553(a). By concentrating all offenders at or near the statutory maximum, § 2G2.2 blunts the fundamental statutory requirement in § 3553(a) that courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and violates the principle, reinforced in *Gall*, that courts must guard against unwarranted similarities amongst sentences for defendants who have been found guilty of dissimilar conduct.

Had Mr. Ballew's case landed in state court, he would be facing a lighter sentencing range than the Guidelines. The Court is permitted to consider a reduced sentence if there is the potential of disparity between punishment resulting from a state conviction rather than a federal conviction. *See United States v. Wilkenson*, 411 F.3d 1, 10 (1st Cir. 2005) (the Court noted in remanding the case for resentencing to permit the district court to consider the disparity between federal and state court sentences in similar cases). Under Texas law, Mr. Ballew would be facing a fine up to $10,000 and a term of imprisonment between two and ten years. Mr. Ballew was also eligible for deferred adjudication—a potential sentence where he would receive no term of imprisonment.

### III. CONCLUSION

For the reasons stated, Mr. Ballew respectfully requests that this Court grant his request for a variance and impose a non-Guideline sentence and impose a sentence of five years in custody and an appropriate term of supervised release with conditions.

Respectfully submitted,

**PAUL DOYLE & ASSOCIATES, P.C.**

By: /s/ *Paul H. Doyle*
    Paul H. Doyle
    State Bar No. 24011387

15

Trevor Sharon
State Bar No. 24086579
440 Louisiana Suite 2300
Houston, Texas 77002
Phone (713) 228-9200
Fax (713) 228-9203
paul@pauldoylelaw.com
trevor@pauldoylelaw.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2107, a true and exact copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ *Paul H. Doyle*
     Paul H. Doyle